DORSEY & WHITNEY LLP
Bruce R. Ewing
Kaleb McNeely
John P. Mixon
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Defendants Hangzhou*
*Taohaowu Technology Co., Ltd.,*
*Hong Kong AllChinaBuy Co., Limited*
*and UK AllChinaBuy Co., Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RVRG HOLDINGS LLC,

        Plaintiff,

          v.

HANGZHOU TAOHAOWU TECHNOLOGY
CO., LTD., HONG KONG ALLCHINABUY
CO., LIMITED and UK ALLCHINABUY CO.,
LIMITED,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

24-CV-08336 (VM)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISSOLVE OR MODIFY PRELIMINARY INJUNCTION ORDER**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

ARGUMENT .......................................................................................................................3

I.    The Court Should Dissolve the Preliminary Injunction Because Plaintiff
      Cannot Show a Likelihood of Success on the Merits .............................................3

      A.    Legal Standard ..........................................................................................3

      B.    Plaintiff Is Not Likely To Succeed On The Merits Of Its
            Trademark Claims......................................................................................5

            1.    AllChinaBuy is not liable for direct trademark infringement......... 5

            2.    AllChinaBuy is not liable for contributory trademark
                  infringement.................................................................................. 12

            3.    AllChinaBuy is not liable for vicarious trademark
                  infringement.................................................................................. 15

II.   Alternatively, Because the Scope of the Preliminary Injunction is Overly
      Broad, the Court Should Narrow It Substantially.................................................17

      A.    The Preliminary Injunction Is Overly Broad Because It Extends
            Outside the United States.........................................................................18

B.    The Preliminary Injunction's Asset Freeze Is Overly Broad Because It
      Extends Beyond the Profits Plaintiff Can Recover in This Action.......................19

CONCLUSION...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Nelson & Co. v. Ellon USA*,
 No. 95 Civ. 3696 (RLC), 1996 U.S. Dist. LEXIS 7479 (S.D.N.Y. May 30,
 1996) ...................................................................................................................................4

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
 600 U.S. 412 (2023)............................................................................................................17

*Atari Interactive, Inc. v. Printify, Inc.*,
 714 F. Supp. 3d 225 (S.D.N.Y. 2024).......................................................6, 10, 11, 12, 13, 15

*Atari Interactive, Inc. v. Redbubble, Inc.*,
 515 F. Supp. 3d 1089 (N.D. Cal. 2021) ...............................................................................6

*Chrysler Corp. v. United States*,
 316 U.S. 556 (1942)............................................................................................................4

*Coley v. Vannguard Urban Improvement Ass'n*,
 No. 12-CV-5565 (PKC) (RER), 2016 U.S. Dist. LEXIS 172378 (E.D.N.Y.
 Dec. 13, 2016)...................................................................................................................19

*Coty Inc. v. Excell Brands, LLC*,
 277 F. Supp. 3d 425 (S.D.N.Y. 2017)...................................................................................5

*Dish Network L.L.C. v. Siddiqi*,
 No. 18 CV 4397 (VB), 2019 U.S. Dist. LEXIS 193095 (S.D.N.Y. Nov. 6,
 2019) .................................................................................................................................15

*Dong v. Miller*,
 No. 16-CV-5836 (NGG) (JO), 2018 U.S. Dist. LEXIS 48506 (E.D.N.Y. Mar.
 23, 2018) ...........................................................................................................................19

*Engine Capital Mgmt., LP v. Engine No. 1. GP LLC*,
 No. 21 Civ. 149 (VM), 2021 U.S. Dist. LEXIS 70374 (S.D.N.Y. Apr. 10,
 2021) ...................................................................................................................................4

*GMA Accessories, Inc. v. BOP, LLC*,
 765 F. Supp. 2d 457 (S.D.N.Y. 2011)........................................................................6, 10, 11

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
 No. 1:22-cv-2753 (MKV), 2023 U.S. Dist. LEXIS 163966 (S.D.N.Y. Sept. 15,
 2023) ...................................................................................................................................4

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999)........................................................................................................19

*Gucci Am., Inc. v. Frontline Processing Corp.*,
    721 F. Supp. 2d 228 (S.D.N.Y. 2010)..........................................................................13

*Gucci Am., Inc. v. Guess?, Inc.*,
    868 F. Supp. 2d 207 (S.D.N.Y. 2012)............................................................................5

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
    826 F.3d 27 (2d Cir. 2016)..............................................................................................5

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
    Nos. 20-6057, 20-6100, 2024 U.S. App. LEXIS 9741 (10th Cir. Apr. 23,
    2024) ..............................................................................................................................18

*Ideavillage Prods. Corp. v. Bling Boutique Store*,
    No. 16-CV-9039 (KMW), 2017 U.S. Dist. LEXIS 61189 (S.D.N.Y. Apr. 21,
    2017) ................................................................................................................................3

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982)........................................................................................................6

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)..............................................................................5, 12, 15

*Kelly-Brown v. Winfrey*,
    No. 11 Civ. 7875 (PAC), 2012 U.S. Dist. LEXIS 29695 (S.D.N.Y. Mar. 6,
    2012) ..............................................................................................................................16

*King Spider LLC v. 884886 CH Store*,
    No. 23-CV-3472 (JMF), 2024 U.S. Dist. LEXIS 113892 (S.D.N.Y. June 26,
    2024) ..............................................................................................................................14

*King Spider LLC v. Panda Hong Kong Tech. Co.*,
    No. 24-CV-2668, 2025 U.S. Dist. LEXIS 7440 (S.D.N.Y. Jan. 14, 2025)
    .................................................................................................4, 5, 6, 9, 10, 11

*Klipsch Grp., Inc. v. Big Box Store Ltd.*,
    No. 12 Civ. 6283 (AJN), 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y Oct. 24,
    2012) ..................................................................................................................19, 20, 21

*Michaels v. Sp. Z.O.O.*,
    No. 16-cv-1015-LJV-JJM, 2023 U.S. Dist. LEXIS 176057 (W.D.N.Y. Sep.
    29, 2023) ........................................................................................................................18

*Minskoff v. Am. Exp. Travel Related Servs. Co., Inc.*,
    98 F.3d 703 (2d Cir. 1996)............................................................................................16

*Museum Boutique Intercontinental v. Picasso*,
    880 F. Supp. 153 (S.D.N.Y. 1995) ........................................................................3, 4

*N. Face Apparel Corp. v. TC Fashions, Inc.*,
    No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30,
    2006) ....................................................................................................................19

*N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*,
    No. 22-CV-7324, 2024 U.S. Dist. LEXIS 2234 (S.D.N.Y. Jan. 3, 2024) ...........5, 6

*New Hope Family Servs. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) .....................................................................................4

*Omega SA v. 375 Canal, LLC*,
    984 F.3d 244 (2d Cir. 2021) ...................................................................................13

*Omega SA v. 375 Canal, LLC*,
    No. 12 Civ. 6979 (PAC), 2016 U.S. Dist. LEXIS 178147 (S.D.N.Y. Dec. 22,
    2016) ....................................................................................................................12

*Rescuecom Corp. v. Google, Inc.*,
    562 F.3d 123 (2d Cir. 2009) .....................................................................................5

*Rosenshine v. A. Meshi Cosmetics Indus.*,
    No. 18-cv-3572 (LDH) (LB), 2021 U.S. Dist. LEXIS 189153 (E.D.N.Y. Sept.
    30, 2021) ...............................................................................................................15

*Sierra Club v. United States Army Corps of Engineers*,
    732 F.2d 253 (2d Cir. 1984) .................................................................................3, 4

*Spin Master v. Aciper*,
    No. 19-CV-6949 (VSB), 2020 U.S. Dist. LEXIS 206278 (S.D.N.Y. Nov. 4,
    2020) ....................................................................................................................18

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    576 F. Supp. 2d 463 (S.D.N.Y. 2008) ..................................................................13

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) ................................................................................5, 12

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................3

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528 (C.D. Cal. July 10, 2020) ......11

*Zino Davidoff SA v. CVS Corp.*,
    571 F.3d 238 (2d Cir. 2009) .....................................................................................3

**Statutes**

15 U.S.C. § 1117(a) ...............................................................................................................19

15 U.S.C. § 1127 ......................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 60(b)(5).............................................................................................................4

## INTRODUCTION

Defendant AllChinaBuy Co., Limited ("AllChinaBuy") is located in Hong Kong and operates a website that enables users around the world to buy products from Chinese e-commerce websites.[1]  AllChinaBuy does not itself sell any products, nor does it list goods for sale on its website, maintain an inventory of goods for sale, review products before they are shipped to users, or possess products at any point.  AllChinaBuy also does not have any partnerships with these e-commerce sites from which users can buy products; it does not exercise any control or management over the e-commerce sites; and it does not contribute any skill or knowledge to the e-commerce sites.  All AllChinaBuy does is provide a web-based service that allows users outside China to purchase products from Chinese e-commerce merchants.

All that said, AllChinaBuy takes affirmative steps to combat illegal activities on or through its site, including trademark infringement.  For example, AllChinaBuy's User Agreement and various other documents it links to prohibit intellectual property infringement. AllChinaBuy regularly blocks access on its website to goods that appear to be counterfeit upon receipt of complaints.  AllChinaBuy also requires shopping agents who make purchases on behalf of consumers to comply with laws protecting intellectual property rights.  Given AllChinaBuy's limited role as an intermediary, and its efforts to stop the sale of counterfeit products, AllChinaBuy cannot be held liable, either directly, contributorily, or vicariously, for

---

[1] There are two other defendants in this action that are affiliates of AllChinaBuy.  The first, Hangzhou Taohaowu Technology Co., Ltd., which is located in the People's Republic of China, supplies certain services to or on behalf of AllChinaBuy, as well as technical and promotional services to other purchasing platforms.  *See* the accompanying Declaration of Ran Zhang ("Zhang Dec."), ¶ 3.  The second, UK AllChinaBuy Co., Limited, exists only for purposes of compliance with the requirements of one of AllChinaBuy's credit card payment service vendors and offers no goods or services at all.  *Id.*, ¶ 4.  Neither of these entities has done anything that could give rise to any liability to plaintiff, on any claim.

any violations of intellectual property law by the e-commerce sites through which goods are purchased, or by the sellers of such goods on such sites, over whom AllChinaBuy has no control.

Notwithstanding, Plaintiff RVRG Holdings LLC ("Plaintiff") has sued AllChinaBuy for trademark infringement and related claims. Dkt. 8. After entering an *ex parte* temporary restraining order on December 9, 2024, Dkt. 18, on December 11, 2024, the Court entered an *ex parte* preliminary injunction order, Dkt. 20 (the "Preliminary Injunction"), that, *inter alia*, enjoined AllChinaBuy from infringing Plaintiff's trademark rights. The Preliminary Injunction also froze AllChinaBuy's assets. But because AllChinaBuy is not liable for trademark infringement, or on any other trademark claims, Plaintiff has not established a likelihood of success on the merits of its claims, and the Court therefore should dissolve the Preliminary Injunction.

In the alternative, the Court should modify the Preliminary Injunction in two respects. First, under the Supreme Court's 2023 *Abitron* decision, injunctions in trademark cases may not extend outside the United States. Accordingly, the Court should modify the Preliminary Injunction to clarify that it only reaches conduct within the United States.

Second, the current asset freeze extends to all assets controlled by AllChinaBuy that far exceed any amount of profits earned by AllChinaBuy on U.S. shipments of potentially infringing goods. An asset freeze, however, is only permitted to ensure the satisfaction of an equitable award of profits. Here, AllChinaBuy has submitted evidence that its profits relating to allegedly infringing products shipped to the U.S. are only approximately $███████ as of August 5, 2025, without deductions for overhead. As a result, if the Preliminary Injunction is not dissolved, the asset freeze should remain in effect only as to that sum.

**FACTUAL BACKGROUND**

AllChinaBuy respectfully refers the Court to the Zhang Declaration for a statement of the relevant facts.  For brevity, factual discussion is incorporated into the arguments below.

**ARGUMENT**

**I.**     **The Court Should Dissolve the Preliminary Injunction Because Plaintiff Cannot Show a Likelihood of Success on the Merits**.

**A.**     **Legal Standard**

"A preliminary injunction is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  *Ideavillage Prods. Corp. v. Bling Boutique Store,* No. 16-CV-9039 (KMW), 2017 U.S. Dist. LEXIS 61189, at *9 (S.D.N.Y. Apr. 21, 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  To obtain a preliminary injunction in the Second Circuit, the moving party carries the heavy burden of "demonstrating (1) 'the likelihood of irreparable injury in the absence of such an injunction,' and (2) either '(a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"  *Id.* at *9-10 (citing *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009)).  Even after a preliminary injunction is granted, however, the "trial court's power to modify an injunction, like the power over all its orders, is inherent."  *Museum Boutique Intercontinental v. Picasso*, 880 F. Supp. 153, 161 (S.D.N.Y. 1995) (citing *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984)).

While the showing necessary to modify or vacate a permanent injunction is "a significant change in the law or facts," the Second Circuit, as well as other courts in this District, have made clear that there need not be a "significant change" in circumstances to modify a preliminary injunction, and that a court considering whether to modify a preliminary injunction need only

exercise '"the same discretion it exercised in granting or denying injunctive relief in the first place."' *See Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-cv-2753 (MKV), 2023 U.S. Dist. LEXIS 163966, at *6-8 (S.D.N.Y. Sept. 15, 2023) (citing *Sierra Club*, 732 F.2d at 256). In that regard, "a district court may modify or vacate a preliminary injunction when, based on principles of equity, the modification is necessary to preserve the status quo." *Picasso*, 880 F. Supp. at 161 (citing *Sierra Club*, 732 F.2d at 257). This is consistent with Federal Rule of Civil Procedure Rule 60(b)(5), which provides for relief from an order where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5); *see also King Spider LLC v. Panda Hong Kong Tech. Co*., No. 24-CV-2668 (JGLC), 2025 U.S. Dist. LEXIS 7440, at *10-*21 (S.D.N.Y. Jan. 14, 2025) (dissolving a preliminary injunction against a defendant that operated a website similar to AllChinaBuy's where the defendant "offered 'new facts' to establish Plaintiff [sic] is not likely to succeed on their direct trademark infringement claims"); *A. Nelson & Co. v. Ellon USA*, No. 95 Civ. 3696 (RLC), 1996 U.S. Dist. LEXIS 7479, at *2-3 (S.D.N.Y. May 30, 1996) (noting that Rule 60(b)(5) authorizes the court to vacate its own preliminary injunction if, in its discretion, it finds that doing so "is warranted by equitable considerations"). The test for whether it is appropriate to modify or vacate a preliminary injunction is "whether the requested modification effectuates or thwarts the purpose behind the injunction." *Sierra Club*, 732 F.2d at 257 (citing *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)).

In deciding whether a preliminary injunction is appropriate, "courts are 'not required to accept all [of plaintiff's] allegations as true or to draw all reasonable inferences in its favor.'" *Engine Capital Mgmt., LP v. Engine No. 1. GP LLC*, No. 21 Civ. 149 (VM), 2021 U.S. Dist. LEXIS 70374, at *27 (S.D.N.Y. Apr. 10, 2021) (quoting *New Hope Family Servs. v. Poole*, 966

F.3d 145, 165 (2d Cir. 2020)). However, even accepting Plaintiff's allegations and declarations as true and drawing all reasonable inferences in its favor, Plaintiff is not likely to succeed on the merits of its trademark claims—whether such claims are construed as alleging direct, contributory, or vicarious infringement—for the reasons set forth below. Accordingly, the Court should dissolve, or at least modify, the Preliminary Injunction.

**B.    Plaintiff Is Not Likely To Succeed On The Merits Of Its Trademark Claims**.

**1.    AllChinaBuy is not liable for direct trademark infringement**.

For a plaintiff to succeed on a direct federal trademark infringement claim, as well as on claims for direct common law infringement, and unfair competition under federal and New York law, it must establish: (1) its trademark merits protection, and (2) the defendant's use is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016); *Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *13 (citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)); *see also Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017) (citing "'familiar two-prong test'" for federal trademark infringement and unfair competition claims, and that such test also applies to claims for trademark infringement and unfair competition under New York law, with the exception that a New York unfair competition claim also requires a showing of bad faith) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 237 (S.D.N.Y. 2012)).

Inherent in this second prong is that, as a threshold matter, the plaintiff must demonstrate the defendant's use of the mark in commerce. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305-06 (2d Cir. 2013); *N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, No. 22-CV-7324 (JGLC), 2024 U.S. Dist. LEXIS 2234, at *40-41 (S.D.N.Y. Jan. 3, 2024) (citing *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009)). In other words, "the alleged infringer must directly use the trademarks" to be held directly liable and "a party that merely facilitates or assists others' use

cannot be liable for direct infringement." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982)); *see also Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *14-*21 (holding that defendant with website similar to AllChinaBuy's was not likely liable for trademark infringement because it was more like a "passive facilitator" than a "seller" or "manufacturer"). In assessing whether use in commerce has occurred, the question is "whether the trademark has been displayed to consumers in connection with a commercial transaction" based on "the totality of the circumstances around the use of the mark." *Icon Trade Servs.*, 2024 U.S. Dist. LEXIS 2234, at *43-44 (citations omitted).

Other courts in this District have recently held that the definition of "use in commerce" in 15 U.S.C. § 1127 "does not necessarily apply to brokers, facilitators, or transactional intermediaries" and that a "passive facilitator" that acts like AllChinaBuy is not liable for trademark infringement. *Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *14; *see also Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d 225, 232 (S.D.N.Y. 2024) (holding that the definition of "use in commerce" in 15 U.S.C. § 1127 "does not necessarily apply to brokers, facilitators, or transactional intermediaries" and that "passive marketplaces like eBay or Amazon 'that facilitate sales for independent vendors . . . generally escape Lanham Act liability,' while 'parties who design and print trademark-infringing goods typically violate the Lanham Act.'") (citation omitted); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 463-64 (S.D.N.Y. 2011) ("[w]hat constitutes a 'seller' in the trademark context is not clear, but in other contexts a transactional intermediary is not treated as a seller") (citations omitted).

Here, AllChinaBuy is not using the marks in commerce and, thus, is not liable for direct trademark violations. In support of its motion for a temporary restraining order, Plaintiff failed

to cite any facts, whether from its Complaint or from the supporting declarations, to plausibly suggest that AllChinaBuy uses Plaintiff's marks in commerce.  *See* Dkt. No. 15 at 1-2, 20; Dkt. 16 at ¶¶ 3-16.  Instead, Plaintiff merely cited the legal proposition that when allegedly counterfeit marks are involved, the court only needs to determine whether there are counterfeits at issue and whether the defendants sold the counterfeits or offered them for sale.  *See* Dkt. 15 at 12.  But even considering Plaintiff's allegations contained in the Complaint and declarations (which the Court is not required to accept as true), Plaintiff has not set forth any non-conclusory allegations plausibly suggesting that AllChinaBuy uses Plaintiff's marks in commerce.

For example, Plaintiff offers conclusory allegations of infringing conduct by AllChinaBuy, like that Defendants "purchase the product and direct shipment to their warehouses in China," "unpackage, photograph and send the photographs to the end consumer for review and approval," and "repackage the product(s) and ships [sic] the product(s) to the consumers located in the U.S., including New York." Dkt. No. 16, ¶ 3.  Plaintiff, however, fails to offer any evidence suggesting that AllChinaBuy actually engages in these acts.  The same is true for Plaintiff's other boilerplate assertions, such as that Defendants "locate, consolidate, market, promote, offer for sale, sell, purchase, open, photograph, warehouse, repackage, ship, export and/or otherwise facilitate the sale of counterfeit products to consumers throughout the [United States], including New York, to their direct financial benefit."  *Id.*, ¶ 5; *see also* Dkt. 8, ¶¶ 23-82.  That is because no facts exist that would support Plaintiff's assertions in light of AllChinaBuy's business model.

Specifically, the process through which AllChinaBuy's users engage third parties to purchase goods from third-party e-commerce sites via AllChinaBuy's platform consists of the following:

(1) the customer identifies a product on a third-party e-commerce website that they wish to purchase;

(2) the customer copies a link to the product from the third-party website into the search bar on AllChinaBuy's platform (or searches for third-party products using words or images);

(3) AllChinaBuy generates its own translated version of a Chinese-language product listing or listings for the customer to review;

(4) the customer enters item specifications, unit quantities, and makes payment accordingly through PayPal, Unlimint, Antom, Onerway or XT;

(5) AllChinaBuy creates a purchase order and directs it to a shopping agent (the shopping agent is not an employee of AllChinaBuy, but an independent third-party agency), who will then purchase the item(s) from the third-party e-commerce website;

(6) the shopping agent helps ship the product(s) to the designated warehouse, which checks the product, takes photos of the product for the customer, and submits the photos to the customer via AllChinaBuy's website for the customer to confirm and approve their purchase;

(7) after approval, the customer provides their shipping information and selects a cross-border courier service before making payment for the courier and service fees;

(8) the warehouse then repackages the goods, as required for international shipping from China, and provides the items to the courier in accordance with the customer's instructions; and

(9) the courier ships the item(s) to the customer's final destination.

Zhang Dec., ¶¶ 6-15.

Notably, throughout the entire purchasing process, AllChinaBuy does not maintain any physical inventory of any products, does not review the products before they are shipped to the customers, does not ever take possession of the products, and does not review third-party merchants' design of products. *Id.*, ¶¶ 9, 20. Additionally, neither AllChinaBuy nor the third-party merchants sell the allegedly counterfeit products directly on AllChinaBuy's website. *Id.* Instead, customers purchasing through AllChinaBuy's platform are buying products from third-party merchants' websites, with AllChinaBuy merely providing translations of website listings for the customer, in three different languages. *Id.*, ¶¶ 6, 9, 20. AllChinaBuy has no ability to regulate product listings on third-party merchant websites. *Id.*, ¶¶ 8-9. And when a

customer purchases a product using AllChinaBuy's platform, it is an independent shopping agent that purchases the product and routes it to a third-party warehouse before the product is shipped by a third-party courier service directly to the customer. *Id.*, ¶¶ 10-17. The only way that AllChinaBuy makes money is by charging a commission in connection with each transaction, and such commission is solely derived as a percentage of shipping service fees, which are not connected to the prices of the products being shipped. *Id.*, ¶¶ 16-17, 30. Instead, the prices of the products are independently set and charged by the third-party merchants. *Id.*, ¶ 20.

Moreover, AllChinaBuy does not advertise any product for sale on its own website or advise users concerning the selection of products. *Id.*, ¶ 8. Nor is there any likelihood that customers will think AllChinaBuy is selling the goods itself, as the packaging does not identify AllChinaBuy in any manner, and customers generally find a product on a third-party website and then copy and paste the third-party merchants' website link into the AllChinaBuy search bar. *Id.*, ¶¶ 9, 18.

The facts here are highly similar to those in the *Panda Hong Kong, Printify* and *GMA Accessories* cases, in which the defendants were deemed to be mere brokers or facilitators, not sellers. In *Panda Hong Kong*, the defendant, Pandabuy, operated a website that, like AllChinaBuy's website, allowed users around the world to buy products from Chinese e-commerce websites. *Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *4. Like AllChinaBuy, Pandabuy allowed customers to copy links to product listings on Chinese-language websites, and paste them into the defendant's website, but did not control or regulate the third-party e-commerce site product listings and did not list products directly on its website. *Id.* at *4-*5. Pandabuy also had arrangements with shopping agents and a warehouse, just as AllChinaBuy does. *Id.* at *5-*7. After the plaintiffs obtained an *ex parte* preliminary injunction,

Pandabuy moved to dissolve or modify the injunction. *Id.* at *8. In a decision issued on January 14, 2025, Judge Clarke granted Pandabuy's motion and dissolved the preliminary injunction. *Id.* at *28. In her decision, Judge Clarke held, *inter alia*, that the plaintiffs were not likely to succeed on their trademark infringement claims because Pandabuy "does not 'exercise sufficient control over the creation, manufacture, or sale of offending goods to be considered akin to a 'seller' or 'manufacturer' to whom Lanham Act liability applies.'" *Id.* at *21 (quoting *Printify*, 714 F. Supp. 3d at 232). Rather, like AllChinaBuy, Pandabuy "acts more like a facilitator than a genuine seller." *Id.* at *18.

In *Printify*, the defendant was a print-on-demand business offering third-party merchants the ability to design and sell merchandise to consumers through the third-party merchants' separate websites. Orders were placed with and filled by the third-party merchants, who, with Printify's facilitation, would route the printing and shipping of goods—some of which were alleged to be infringing—to a third-party printer. *Printify*, 714 F. Supp. 3d at 229-31. Notably, Printify did not review merchant product designs at any time during the design process; merchants did not sell their products on Printify's website (except for a few "Printify Pop-Up merchants"); Printify did not review products before they were shipped to customers; Printify did not ever take possession of the products; and the packaging for goods shipped to customers did not identify Printify in any way. *Id.* Based on these facts, Judge Stein held that the plaintiff was not entitled to preliminary injunctive relief on its claim for direct infringement. *Id.* at 231-34.

In *GMA Accessories*, the defendant, Electric Wonderland ("Electric"), was a fashion industry showroom services supplier that displayed clothing and fashion accessories to potential wholesale purchasers for manufacturers. *See GMA Accessories*, 765 F. Supp. 2d at 461. Electric made money through commissions earned on any sales it brokered between manufacturers and

wholesalers.  *Id.* at 461.  At all times, the goods at issue on display in Electric's showroom were labeled with the manufacturer's name, which the plaintiff alleged was infringing, but Electric did not label the goods itself or have any control over such labeling.  *Id.* at 463.  Additionally, Electric never "took title to the merchandise, maintained an inventory of merchandise, [or] bore the risk of loss."  *Id.* at 464.  Accordingly, the court denied plaintiff's motion for summary judgment as to defendant's liability for direct infringement because there was no evidence of any "traditional indicia of status as seller," which was consistent with the defendant's "assertion that it is merely a broker, rather than a direct seller."  *Id.* at 464.

Like the defendants in *Panda Hong Kong*, *Printify* and *GMA Accessories*, AllChinaBuy "plays no role in the 'creation' or 'manufacture' of any offending goods . . . does not maintain inventory, bear the risk of loss, and only collects money by fee."  *Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *18-*19 (citing *Printify*, 714 F. Supp. 3d at 229); *see also GMA Accessories*, 765 F. Supp. 2d at 463-64; *Printify*, 714 F. Supp. 3d at 232-234.  These facts make AllChinaBuy a "passive facilitator," or broker, rather than a seller.  *See Panda Hong Kong*, 2025 U.S. Dist. LEXIS 7440, at *3 ("Because the evidence now before the Court indicates [that] Pandabuy operates more like a passive facilitator than a seller or manufacturer, the Court must dissolve the Preliminary Injunction."); *Y.Y.G.M. SA v. Redbubble, Inc.*, No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528, at *3-4 (C.D. Cal. July 10, 2020) (finding that defendant was akin to an auction house, rather than a company that manufactures and ships products itself, particularly "in light of the fact that the service fee Redbubble imposes on transactions through its site bears no relation to the price of the goods sold" as a "fee-based business model indicates the role of a service provider rather than a seller").

Accordingly, AllChinaBuy—as a mere broker, facilitator, or "passive marketplace"—does not use the Plaintiff's marks in commerce such that it can be liable for direct trademark infringement or any other direct violations of Plaintiff's trademark rights, and Plaintiff is not likely to succeed on the merits of those direct claims.

### 2. AllChinaBuy is not liable for contributory trademark infringement.

It is not clear to AllChinaBuy whether Plaintiff has intended to assert secondary claims of infringement and unfair competition against it, whether contributorily or vicariously. But if Plaintiff did intend to plead such claims, they too do not support the prior grant of preliminary injunctive relief.

A defendant will be held "liable for contributory trademark infringement if it: (1) intentionally induces another to infringe a trademark; or (2) continues to supply its service to one whom it knows or has reason to know is engaging in trademark infringement." *Printify*, 714 F. Supp. 3d at 235 (citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 106 (2d Cir. 2010)); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (citation omitted). Notably, service providers may only be held contributorily liable "when they possess 'sufficient control over the means of the infringing conduct.'" *Omega SA v. 375 Canal, LLC*, No. 12 Civ. 6979 (PAC), 2016 U.S. Dist. LEXIS 178147, at *5 (S.D.N.Y. Dec. 22, 2016) (quoting *eBay*, 600 F.3d at 105).

As an initial matter, and as described above, AllChinaBuy is merely a service provider or facilitator with no ability to control "the means of the infringing conduct" because the infringing products are manufactured, marketed, and sold by third-party sellers using third-party e-commerce platforms. *See id.* at *5. This fact alone warrants a finding that AllChinaBuy is not liable for contributory trademark infringement.

Furthermore, under the first prong, AllChinaBuy has not intentionally induced any third party to infringe on Plaintiff's trademarks.  AllChinaBuy's business model does not involve intentionally inducing any individuals or entities to infringe on Plaintiff's or any other parties' trademarks, as AllChinaBuy does not create the goods or list them for sale on its website.  Zhang Dec., ¶¶ 8-9, 20.  Any allegedly counterfeit goods would be manufactured and offered for sale with or without AllChinaBuy's involvement, because AllChinaBuy merely provides a platform through which users can purchase goods already available on third-party e-commerce sites.  *Id.*, ¶¶ 2, 6-9.  Even taking into consideration that AllChinaBuy had agreements with social media influencers who promote AllChinaBuy and receive a "promotional commission" for attracting customers, *id.*, ¶¶ 21-22, AllChinaBuy does not intentionally induce infringement.  Rather, it is the third-party e-commerce platforms and their sellers that are committing the alleged infringement.  And AllChinaBuy does not advise its customers on how to avoid customs seizures.  *Id.*, ¶ 18.

With respect to the second prong, a defendant may be held liable for a third-party's trademark violations "if it supplied services with knowledge or by willfully shutting its eyes to the infringing conduct, while it had sufficient control over the instrumentality used to infringe." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010) (citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 505-506 (S.D.N.Y. 2008)).  To establish the requisite knowledge in this context, "general knowledge of infringement is insufficient," and the plaintiff must instead establish that the defendant had "'[s]ome contemporary knowledge of **which particular listings are infringing** or will infringe in the future.'"  *Printify*, 714 F. Supp. 3d at 235 (emphasis in original).  "Where a defendant on notice of specific infringement 'undertakes bona fide efforts to root out infringement, . . . that will support a verdict finding no

liability, even if the defendant was not fully successful in stopping infringement. But if the defendant decides to take no or little action, it will support a verdict finding liability.'" *Id.* (citing *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021)).

As to AllChinaBuy's knowledge of listings infringing Plaintiff's trademarks, Plaintiff does not allege that it contacted AllChinaBuy regarding the alleged infringement at any point prior to filing this action. *See generally* Complaint. As such, AllChinaBuy was only put on notice of the specific infringing listings in December 2024, when AllChinaBuy became aware of this action. Zhang Dec., ¶ 23. Upon receiving notice of Plaintiff's allegations, AllChinaBuy prohibited customers from searching for Chinese website listings for products bearing Plaintiff's trademarks or brand names, and has taken steps to prohibit customers from searching for Plaintiff's brand names using the image search function on AllChinaBuy's website. *Id.*, ¶ 24. Additionally, AllChinaBuy never told influencers with which it has partnered which goods to recommend to their followers, did not create any of the influencer spreadsheets containing the influencers' recommendations, and has suspended all its influencer contracts that have not already expired. *Id.*, ¶¶ 21-22. Thus, AllChinaBuy was unaware of the allegedly infringing activities before the suit was filed, and, upon learning of these allegedly infringing activities, it undertook *bona fide* steps to prevent the infringement.

Because the Complaint does not contain any non-conclusory allegations to the contrary, Plaintiff has not plausibly alleged facts supporting liability as to the second contributory infringement prong. *See King Spider LLC v. 884886 CH Store*, No. 23-CV-3472 (JMF), 2024 U.S. Dist. LEXIS 113892, at *6-8 (S.D.N.Y. June 26, 2024) (granting defendants' motion to dismiss claim for contributory trademark infringement where the plaintiff, King Spider LLC,

failed to make any non-conclusory allegations that the defendants, various Alibaba e-commerce

entities, were specifically aware of certain merchants' allegedly infringing activity).

        For the same reasons as explained above, the facts here are akin to the facts in *Printify*,

where the Court denied the plaintiff's preliminary injunction motion because it failed to

demonstrate a likelihood of success on its contributory infringement claim.  *Printify*, 714 F.

Supp. 3d at 235-36.  As in *Printify*, AllChinaBuy is not liable for contributory infringement.

### 3.      AllChinaBuy is not liable for vicarious trademark infringement.

        "Mere knowledge of the primary actor's wrongful conduct does not establish liability for

vicarious trademark infringement."  *Dish Network L.L.C. v. Siddiqi*, No. 18 CV 4397 (VB), 2019

U.S. Dist. LEXIS 193095, at *14 (S.D.N.Y. Nov. 6, 2019) (citation omitted).  Instead, vicarious

liability for trademark infringement "'requires a finding that the defendant and the infringer have

an apparent or actual partnership, have authority to bind one another in transactions with third

parties or exercise joint ownership or control over the infringing product.'"  *Id.* at *14-15

(quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)).

        To show that an actual partnership exists, a plaintiff must demonstrate: (1) the sharing of

profits and losses; (2) joint control and management over the business; (3) that each party has

contributed "'property, financial resources, effort, skill, or knowledge to the business'"; and

(4) the intention by each party to be a partner.  *Rosenshine v. A. Meshi Cosmetics Indus.*, No. 18-

cv-3572 (LDH) (LB), 2021 U.S. Dist. LEXIS 189153, at *11 (E.D.N.Y. Sept. 30, 2021).

        Plaintiff's Complaint and affidavits do not allege in any manner that AllChinaBuy has a

partnership relationship with the third-party merchants that sell the allegedly infringing products.

This is because no such relationship exists.  AllChinaBuy does not receive any payment from the

third-party merchants that allegedly sell the counterfeit goods, let alone a share of profits and

losses resulting from the third-party merchants.  Zhang Dec., ¶¶ 20, 30.  It also does not exercise

any control or management over the business of the third-party merchants or make any contributions of property, financial resources, effort, skill, or knowledge.  *Id.*, ¶ 8-9, 20.  It merely facilitates consumers' ability to purchase goods from third-party websites through its translation and informational services.  Therefore, no actual partnership agreement exists between AllChinaBuy and the allegedly infringing third-party merchants.

No apparent agency relationship exists between AllChinaBuy and the third-party merchants selling the allegedly counterfeit goods either.  An "apparent agency" relationship arises through "'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him.'"  *Kelly-Brown v. Winfrey*, No. 11 Civ. 7875 (PAC), 2012 U.S. Dist. LEXIS 29695, at *23-24 (S.D.N.Y. Mar. 6, 2012) (quoting *Minskoff v. Am. Exp. Travel Related Servs. Co., Inc.*, 98 F.3d 703, 708 (2d Cir. 1996)).  Plaintiff has not set forth any facts regarding any relationship, conduct, or communications between AllChinaBuy and the third-party merchants that would cause a customer to believe that AllChinaBuy was authorized to act on behalf of the merchants.  Additionally, Plaintiff has not alleged anything from which the Court can infer that AllChinaBuy has any authority to bind the third-party merchants in transactions with AllChinaBuy's customers.  And even assuming that AllChinaBuy and the third-party merchants are working together or had some type of arrangement (which they are not and do not), Plaintiff has offered no facts that indicate AllChinaBuy can bind the merchants.

Finally, Plaintiff has not alleged any facts demonstrating that AllChinaBuy has joint ownership or control over the infringing products.  AllChinaBuy does not review third-party merchants' design of products, those merchants do not sell their products directly on

16

AllChinaBuy's website, AllChinaBuy does not review the products before they are shipped to the customers, and AllChinaBuy does not ever take possession of the products. Zhang Dec., ¶¶ 9, 20. Plaintiff has not alleged any non-conclusory facts that plausibly indicate AllChinaBuy has any form of control over the infringing products. Accordingly, Plaintiff has failed to demonstrate that it is likely to succeed on its claim for vicarious trademark infringement.

In sum, Plaintiff has wholly failed to establish that it is likely to succeed on the merits of its trademark claims, whether on theories of direct, contributory, or vicarious liability. Because there is no likelihood of success on the merits, and because AllChinaBuy has no responsibility for or ability to control the third-party merchants' actions, continuing to apply the Preliminary Injunction prospectively is no longer equitable. As such, AllChinaBuy respectfully requests that the Court dissolve the Preliminary Injunction.

## II. Alternatively, Because the Scope of the Preliminary Injunction is Overly Broad, the Court Should Narrow It Substantially

Alternatively, if the Court does not dissolve the Preliminary Injunction, it should modify that order because the Preliminary Injunction is overly broad in two respects. First, the Preliminary Injunction currently extends worldwide and is not limited to activity in the United States. Under the Supreme Court's decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412 (2023), however, prohibitions on trademark infringement generally only apply to infringing uses occurring in the United States, and therefore injunctions in trademark cases also may only govern conduct in the United States.

Second, the scope of the Preliminary Injunction's asset freeze extends beyond what U.S. law permits, because an asset freeze can be issued only to restrain funds necessary to satisfy a potential equitable claim for profits, not to secure a future award of damages.

### A.    The Preliminary Injunction Is Overly Broad Because It Extends Outside the United States

In 2023, the Supreme Court issued its *Abitron* decision, holding that the Lanham Act's prohibitions on trademark infringement "are not extraterritorial and . . . extend only to claims where the claimed infringing use in commerce is domestic." *Abitron*, 600 U.S. at 415.  As a result, only allegedly infringing use of a mark in the United States can subject a defendant to liability in a trademark case.

Moreover, because the Lanham Act does not extend to conduct outside the United States, injunctive relief in trademark actions must be limited to activities within the United States.  *See Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, Nos. 20-6057, 20-6100, 2024 U.S. App. LEXIS 9741, at *39 (10th Cir. Apr. 23, 2024) ("[A]ny permanent injunction issued against [trademark infringement defendant] cannot extend beyond [defendant's] qualifying domestic conduct."); *Michaels v. Sp. Z.O.O.*, No. 16-cv-1015-LJV-JJM, 2023 U.S. Dist. LEXIS 176057, at *9 (W.D.N.Y. Sep. 29, 2023) ("[F]ollowing Abitron, the Court lacks the power to grant the Plaintiffs a worldwide injunction to deter Lanham Act violations.") (citation omitted).

The Preliminary Injunction, however, is not limited to conduct within the United States and, on its face, extends worldwide.  Presumably this is because Plaintiff failed to cite the *Abitron* decision, let alone discuss its implications for extraterritorial injunctions, in any of its papers.  In light of the prohibition on extraterritorial injunctions in trademark and copyright infringement actions, however, AllChinaBuy respectfully submits that, at a minimum, the Court should modify the Preliminary Injunction to make clear that all of its provisions extend only to conduct within the United States.

**B.    The Preliminary Injunction's Asset Freeze Is Overly Broad Because It Extends Beyond the Profits Plaintiff Can Recover in This Action**

The Preliminary Injunction's freeze of all AllChinaBuy assets is also overly broad and should be modified because asset freezes may only extend to funds sufficient to secure an award of an accounting of profits.  "A 'court may not enter a preliminary injunction simply to safeguard [a defendant's] assets in the event that [defendant is] ultimately held liable on these claims.'" *Spin Master v. Aciper*, No. 19-CV-6949 (VSB), 2020 U.S. Dist. LEXIS 206278, at *8 (S.D.N.Y. Nov. 4, 2020) (quoting *Dong v. Miller*, No. 16-CV-5836 (NGG) (JO), 2018 U.S. Dist. LEXIS 48506, at *29 (E.D.N.Y. Mar. 23, 2018)); *see also Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2016 U.S. Dist. LEXIS 172378, at *11 (E.D.N.Y. Dec. 13, 2016) ("[C]ourts consistently refuse to allow preliminary injunctions when such injunctions essentially seek security for a potential future award of money damages and are requested merely because of a feared inability to collect a prospective judgment.") (citation and internal quotation marks omitted).  To this point, both the Supreme Court and courts in this District have made it clear that preliminary injunctions containing asset freezes may not be used to preserve a statutory damages award.  *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 U.S. Dist. LEXIS 153137, *10-11, *26 (S.D.N.Y Oct. 24, 2012) (observing that Supreme Court precedent "precludes a freeze of assets for the purpose of preserving an award of statutory damages" and holding that "a preliminary injunction freezing $2 million of [the defendant's] money to preserve a possible award of statutory damages is not permissible") (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)).

Instead, "[d]istrict courts have the authority to freeze those assets which could be used to satisfy an equitable award of profits."  *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citations

and quotation marks omitted); *see also Klipsch Grp.*, 2012 U.S. Dist. LEXIS 153137, *13-15 (collecting cases demonstrating that "case law in the Second Circuit confines the accounting to which 15 U.S.C. § 1117(a) entitles a Lanham Act plaintiff to a defendant's profits" before explaining "[t]he requirement that an accounting be connected to the defendant's profits") (citations omitted). To determine the proper limit of an asset freeze that covers only a plaintiff's right to the potential recovery of an equitable award of profits, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Klipsch Grp*, 2012 U.S. Dist. LEXIS 153137, at *24-27 (citations and internal quotations marks omitted). The burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities. *Id.*

AllChinaBuy has compiled a spreadsheet documenting 625 transactions from April 25, 2024 through July 12, 2025 in which consumers around the world purchased goods from third-party merchants, facilitated by AllChinaBuy, that were described as bearing Plaintiff's trademarks. Zhang Dec., ¶¶ 25-27, Exhibit E.

To ensure the accuracy of the data in the spreadsheet, AllChinaBuy used Plaintiff's brand name, as well as variations like "Rude," as search terms. *Id.*, ¶ 26. Sorting by orders shipped solely to the U.S., including Puerto Rico and the U.S. Virgin Islands, there are only 252 orders with a collective purchase price sum of RMB█████, which is equivalent to roughly US $█████ as of August 5, 2025. *Id.*, ¶ 27. Based on this data, AllChinaBuy has also calculated its gross profits from 172 international shipping parcels that included the 252 U.S. orders of goods bearing the RHUDE mark or a variation thereof, though that number is greater than the profits associated with the 252 orders. *Id.*, ¶¶ 28-29. After deducting direct costs incurred by AllChinaBuy from its revenues associated with the 172 international shipments,

AllChinaBuy calculates that its gross profits associated with the international shipments of the 172 parcels, which encompassed the 252 U.S. orders, were RMB ████ (approximately US $████ as of August 5, 2025). *Id.* That is a far cry from the roughly US $████ that is currently frozen. *Id.*, ¶ 32.

Based on the foregoing, RMB████, or approximately US $████, is the only amount of AllChinaBuy's assets that should be frozen, and all other assets should be exempted from the asset freeze, assuming the Court declines to dissolve the Preliminary Injunction entirely. *See Klipsch*, 2012 U.S. Dist. LEXIS 153137, at *24-33 (reducing asset freeze from $2 million to $20,000 in light of evidence of defendant's profits).

## CONCLUSION

For the reasons set forth above, AllChinaBuy respectfully requests that the Court grant its Motion and dissolve the Preliminary Injunction Order or, in the alternative, modify the scope of the Preliminary Injunction Order so that it (i) extends only to activity in the United States; and (ii) freezes only those assets necessary to satisfy a potential equitable award of profits.

Dated:    August 11, 2025

DORSEY & WHITNEY LLP

*/s/ Bruce R. Ewing*
Bruce R. Ewing
Kaleb McNeely
John P. Mixon
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
ewing.bruce@dorsey.com
mcneely.kaleb@dorsey.com
mixon.john@dorsey.com

*Attorneys for Defendants Hangzhou
Taohaowu Technology Co., Ltd., Hong
Kong AllChinaBuy Co., Limited and
UK AllChinaBuy Co., Limited*