UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RVRG HOLDINGS LLC,<br><br>Plaintiff<br><br>v.<br><br>HANGZHOU TAOHAOWU TECHNOLOGY CO., LTD., HONG KONG ALLCHINABUY CO., LIMITED and UK ALLCHINABUY CO., LIMITED,<br><br>Defendants | **Case No.: 24-cv-8336 (VM)** |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE OR MODIFY THE PRELIMINARY INJUNCTION ORDER**

1

**Table of Contents**

I. **INTRODUCTION**.................................................................................................... 4

II. **ARGUMENT**......................................................................................................... 4

    A. Legal Standard................................................................................................ 5

    B. Plaintiff is Not Likely to Succeed on Its Direct Trademark Infringement Claims................................................................................................................. 5

    C. The Preliminary Injunction Order Is Overbroad To Cover Worldwide Territory............................................................................................................. 12

    D. The Preliminary Injunction Is Overbroad as Extending Beyond Profits................................................................................................................. 13

III. **CONCLUSION**.................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                         **Page(s)**

*Greater Chautauqua Fed. Credit Union v. Quattrone,* 2023 U.S. Dist. LEXIS 163966(S.D.N.Y. Sept. 15, 2023)……………………………………..…………… 5

*Sierra Club v. United States Army Corps of Engineers,* 732 F.2d 253(2d Cir. 1984)…… 5

*Engine Capital Mgmt., LP v. Engine No. 1 GP LLC,* 2021 U.S. Dist. LEXIS 70374(S.D.N.Y. Apr. 10, 2021)…………...……...……...……...……..………...……...……..……... 5

*New Hope Family Servs. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020)…….…….…….……. 5

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27(2d Cir. 2016)……………… 6

*King Spider LLC v. Panda Hong Kong Tech.* Co., 2025 U.S. Dist. LEXIS 7440(S.D.N.Y. Jan. 14, 2025)……………………………………………………………………………. 6,7,9,10

*Kelly-Brown v. Winfrey,* 717 F.3d 295, 306 (2d Cir. 2013)................................................. 6

*Atari Interactive, Inc. v. Printify, Inc.,* 714 F. Supp. 3d 225 (S.D.N.Y. 2024)………….. 6,7

*Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 446 (6th Cir. 2021).............................. 6

*GMA Accessories, Inc. v. BOP, LLC,* 765 F. Supp. 2d 457, 463(S.D.N.Y. 2011) ............... 7

*Y. Y. G.M. SA v. Redbubble, Inc.*, 2020 U.S. Dist. LEXIS 228578(C.D. Cal.2020).............. 8

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 97(2d Cir. 2010)............................................. 9

*Celine S.A. v. Hongkong CSSBUY E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474(S.D.N.Y.2024)................................................................................................... 13,14

**Statutes**

15 U.S.C. § 1127 ................................................................................................................ 6

**INTRODUCTION**

Defendant HONG KONG ALLCHINABUY CO., LIMITED ("Defendant" or "AllChinaBuy"), submit this Reply to the PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE OR MODIFY THE PRELIMINARY INJUNCTION ORDER(Document No. 65) ("Opposition").

As stated in the MOTION TO DISSOLVE OR MODIFY THE PRELIMINARY INJUNCTION ORDER(Document No.43)("MTD"), Defendant operates a website- https://www.allchinabuy.com that enables users around the world to buy products from Chinese ecommerce websites. Defendant does not itself sell any products itself, nor does it list goods for sale on its website, maintain an inventory of goods for sale. Defendant also does not have any partnerships with these e-commerce sites from which users can buy products; it does not exercise any control or management over the e-commerce sites; and it does not contribute any skill or knowledge to the e-commerce sites. All Defendant does is provide a web-based service that allows users outside China to purchase products from Chinese e-commerce merchants.

Given AllChinaBuy's limited role as a facilitator or transactional intermediary, AllChinaBuy cannot be held liable for trademark infringement or for any violations of intellectual property law by the e-commerce sites through which goods are purchased, or by the sellers of such goods on such sites, over whom AllChinaBuy has no control. Because AllChinaBuy is not liable for trademark infringement, or on any other trademark claims, Plaintiff has not established a likelihood of success on the merits of its claims, and the Court therefore should dissolve the Preliminary Injunction.

**ARGUMENT**

**I. The Court Should Dissolve the Preliminary Injunction Because Plaintiff Cannot Show a Likelihood of Success on the Merits of Trademark Infringement Claims**

4

### A. Legal Standard

Defendant holds its position that has been stated in the MTD regarding the legal standard for the court to modify or vacate a preliminary injunction. "If the injunction was "preliminary," the district court would be "charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Greater Chautauqua Fed. Credit Union v. Quattrone*, 2023 U.S. Dist. LEXIS 163966, *7-8. In *Credit Union v. Quattrone,* where Plaintiffs "invoke out-of-Circuit case law to conclude that a party moving to modify a preliminary injunction must show that such modification is justified by a 'significant change in facts or law', the Court disagrees." Id, *9. The test for whether it is appropriate to modify or vacate a preliminary injunction is "whether the requested modification effectuates or thwarts the purpose behind the injunction." *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253, 257 (citing *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)).

In deciding whether a preliminary injunction is appropriate, "courts are 'not required to accept all [of plaintiff's] allegations as true or to draw all reasonable inferences in its favor.'" *Engine Capital Mgmt., LP v. Engine No. 1 GP LLC*, 2021 U.S. Dist. LEXIS 70374, *27*(quoting *New Hope Family Servs. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020)). Nevertheless, even accepting Plaintiff's allegations and declarations as true and drawing all reasonable inferences in its favor, Plaintiff is not likely to succeed on the merits of its trademark claims—whether such claims are construed as alleging direct, contributory, or vicarious infringement—for the reasons set forth below. Accordingly, the Court should dissolve, or at least modify, the Preliminary Injunction.

### B. Plaintiff Is Not Likely To Succeed On The Merits Of Its Trademark Infringement Claims

"A claim of trademark infringement under the Lanham Act is analyzed under a two-prong test." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37. "The first prong looks to whether the senior user's mark is entitled to protection; the second to whether the junior user's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods." *Id*.

Defendant does not dispute that Plaintiff's mark is entitled to protection. The dispute then focuses on the Second prong. "[I]n determining whether the plaintiffs have satisfied the 'use in commerce' requirement, we(the Court) ask whether the trademark has been displayed to consumers in connection with a commercial transaction." *King Spider LLC v. Panda Hong Kong Tech. Co.*, 2025 U.S. Dist. LEXIS 7440, *14(citing *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013)). The Court further held that "The term 'use in commerce' is broad and has a sweeping reach, and the issue must be assessed on case-by-case basis by considering the totality of the circumstances around the use of the mark. *Id.*

In case *Atari Interactive, Inc. v. Printify, Inc.*, the Court reasoned that "The statutory definition for "use in commerce" is broad and encompasses "the bona fide use of a mark in the ordinary course of trade" when "placed in any manner on the goods . . . and the goods are sold or transported in commerce." *15 U.S.C. § 1127*. Even so, cases do find that the statute does not necessarily apply to brokers, facilitators, or transactional intermediaries." *Atari Interactive, Inc. v. Printify, Inc.,* 714 F. Supp. 3d 225, 232. "[P]assive marketplaces like eBay or Amazon 'that facilitate sales for independent vendors…generally escape Lanham Act liability,' while 'parties who design and print trademark-infringing goods typically violate the Lanham Act."*Id*. (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 446 (6th Cir. 2021)). In case *Atari,* Defendant Printify is a print-on-demand-service where merchants can design products by uploading images or choosing from images in Printify's existing library. *Id*. at 229. Merchants would select an image and a product, then publish their products,

adding it to Printify's database for purchase. *Id.* Once a consumer purchased a product, the order would be routed through Printify to a third-party printer, who would then manufacture the product and ship it to the consumer. *Id.* at 229-230. Printify never took possession of any inventory. *Id*. The Court quoted another case *GMA Accessories, Inc. v. BOP, LLC* from the same Circuit, where "a trademark holder sued a wholesale clothing showroom company that displayed counterfeit products on its showroom floor."*Id.* at 234. "As here, the defendant claimed that it was a broker of the products and should not be liable as a seller. In that case, Judge P. Kevin Castel denied plaintiff's summary judgment motion, finding 'no evidence that [defendant] [**17] took title to the merchandise, maintained an inventory of merchandise, bore the risk of loss or other traditional indicia of status as seller.'" *Id*. "The court also credited evidence that the defendant only collected commissions on the sales, which is consistent with being a broker." *Id*. Ultimately, the Court held that "though Printify is more actively involved than a passive showroom broker, it does not take title to merchandise or maintain inventory. Printify's fee-based payment structure is also consistent with being an intermediary. Accordingly, these indicia also support finding for Printify. In sum, Atari has not shown it is likely to be successful in demonstrating that Printify is 'using' its marks, as opposed to acting as a passive facilitator." *Id*.

The above standard of defining a "passive facilitator" has been also applied by this Court in another case *King Spider LLC v. Panda Hong Kong Tech. Co*. "Plaintiffs, several large apparel brands, allege that Pandabuy(Defendant) uses its website to assist consumers across the globe in purchasing counterfeit versions of Plaintiffs' products from third party e-commerce Chinese websites." *King Spider LLC v. Panda Hong Kong Tech. Co.*, 2025 U.S. Dist. LEXIS 7440, 2. Pandabuy is an online shopping platform that allows consumers to purchase goods from third-party Chinese e-commerce platforms based in China which do not ship directly to the United States. *Id*. "Consumers first create an account with Pandabuy and

provide their contact information and mailing address. ECF No. 96 ('Mao Decl.') ¶4. Customers then copy links to product listings on a Chinese-language website and paste them into Pandabuy's website. *Id*. ¶6. Pandabuy translates these links from foreign merchant storefronts on Chinese e-commerce platforms into English, Korean, Chinese, or Spanish so the user can read them. *Id*. Customers can also search, through Pandabuy's website, for goods by product name or category, or by copying an image [*5] from a Chinese-language website. *Id*. Pandabuy does not control or regulate the product listings from these third-party e-commerce sites. *Id*. Pandabuy is not itself a marketplace: sellers do not list products directly on their website." *Id.* at 4-5. The Court reasoned that "The critical question is where the alleged infringer—here, Defendant Pandabuy—falls on the following spectrum: does it 'avoid liability by acting as a passive facilitator,' or does it 'exercise sufficient control over the creation, manufacture, or sale of offending goods to be considered akin to a 'seller' or 'manufacturer' to whom Lanham Act liability applies?'" *Id*. at 14. Specifically, "The key distinction between a direct seller who 'uses' a trademark under the Lanham Act and a mere facilitator of sales who does not is the degree to which the party represents itself, rather than a third-party vendor, as the seller, or somehow identifies the goods as its own." *Id*. at 18.

In reviewing this distinction, the Court found that "Third-party merchants, not Pandabuy, generate, own, and manage any allegedly infringing listings, Mao Decl. ¶¶ 4-6, and Pandabuy 'indicates to consumers that they are purchasing goods from third-party [merchants].' "*Id.* Furthermore, "It is also undisputed [*19] that Pandabuy plays no role in the 'creation' or 'manufacture' of any offending goods." *Id.* at 18-19. "While Pandabuy plays a role in the distribution process, id., the evidence does not demonstrate Pandabuy acts more like a seller than a facilitator. For instance, Pandabuy does not maintain inventory, bear no risk of loss, and only collects money by fee, whereas a seller would typically 'adjust[] price[s] in relation to the value of the goods in question.'"*Id.* at 19 (citing *Y.Y.G.M. SA v. Redbubble, Inc.,* No.

19-CV-4618 (RGK); 2020 U.S. Dist. LEXIS 228578, 2020 WL 3984528, at *3 (C.D. Cal. July 10, 2020).) "Even with certain points of distinction—e.g., Pandabuy consumers (unlike *Printify*) know they are interacting with Pandabuy, and Pandabuy plays a larger role in directing third parties than Printify did—based on the totality of the circumstances, *Printify* instructs that Pandabuy does not act as a true seller under the Lanham Act." *Id*. at 19. The Court held that "Ultimately, Pandabuy's 'use' of the marks is not 'likely to cause consumers confusion as to the origin or sponsorship' [*20] of the goods from third party e-commerce websites. *Id*, *19-20.(citing Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102 (2d Cir. 2010) (citation omitted).

 Here, similar to *Pandabuy*, AllChinaBuy acts more like a facilitator than a seller and is not "'likely to cause consumers confusion as to the origin or sponsorship' of the goods from third party e-commerce websites" (citing *King Spider LLC v. Panda Hong Kong Tech. Co.*, 2025 U.S. Dist. LEXIS 7440, 19-20)) Defendant shall explain the reasons below.

First, customers purchasing through AllChinaBuy's platform are buying products from third-party merchants' websites, with AllChinaBuy merely providing translations of website listings for the customer, in three different languages. *See* Declaration of Ran Zhang ("Zhang Dec."), ¶¶ 6,9,20. AllChinaBuy does not generate, own, and manage any allegedly infringing listings at issue. Id., ¶¶ 6-15. In its user registration agreement, AllChinaBuy explicitly states that "AllChinaBuy will purchase items from your designated third-party merchants free of charge (except for items on certain websites) on your behalf". *See* Exhibit A: AllChinaBuy User Registration Agreement. II.1.(1)Shopping agent services.(Updated on: 2024-01-20; Effective on: 2024-01-20). AllChinaBuy has no ability to alter, revise and regulate product listings on third-party merchant websites. Zhang Dec., ¶¶ 8-9. Second, AllChinaBuy does not maintain any inventory and bears the risk of loss of allegedly infringing products at issue. Zhang Dec., ¶¶ 9, 20. Third, the only way AllChinaBuy makes money is by charging a

commission in connection with each transaction, and such commission is solely derived as a percentage of shipping service fees, which are not connected to the prices of the products being shipped. Id., ¶¶ 16-17, 30. Notably, the prices of the products are independently set and charged by the third-party merchants. Id., ¶20. Based on the totality of the circumstances, like *Pandabuy,* AllChinaBuy does not act as a true seller under the Lanham Act and acts merely as a passive facilitator. Therefore, AllChinaBuy cannot be liable for direct trademark infringement or any other direct violations of Plaintiff's trademark rights, and Plaintiff is not likely to succeed on the merits of those direct claims.

Plaintiff repeatedly alleges that "Defendant' role in the counterfeiting operation is significant and includes activities such as locating, consolidating, marketing, promoting, offering for sale, selling, purchasing, opening, photographing, warehousing, repackaging, shipping, exporting Counterfeit Products, among other services directly by, or at the direction of AllChinaBuy". *See* Opposition, 5. However, Plaintiff has failed to prove that AllChinaBuy acts more like a seller than a facilitator as it is undisputed that AllChinaBuy takes no title of the merchandise and infringing product listings, does not maintain inventory and bear the risk of loss of allegedly infringing products at issue, and only charges a commission fee in connection with each transaction(solely derived as a percentage of shipping service fees). AllChinaBuy never represents itself, rather than a third-party vendor or transactional intermediary, as the seller, or somehow identifies the infringing goods as its own.

AllChinaBuy connects customers with independent shopping agents and a third-party warehouse. When a customer purchases a product using AllChinaBuy's platform, it is an independent shopping agent that purchases the product and routes it to a third-party warehouse before the product is shipped by a third-party courier service directly to the customer. Zhang Dec.,., ¶¶ 10-17. It appears true that Plaintiff alleges that Defendant plays a role in "opening, photographing, warehousing, repackaging, shipping, exporting Counterfeit

Products". *See* Opposition, 5. However, similar to the Defendant in *Pandabuy*, "Pandabuy participates in the process by connecting consumers with third-party products, who in turn correspond with two companies 'managed' by Pandabuy." *King Spider LLC v. Panda Hong Kong Tech. Co.*, 17. In *Pandabuy,* The Court ultimately held that "While Pandabuy plays a role in the distribution process, id., the evidence does not demonstrate Pandabuy acts more like a seller than a facilitator" as "Pandabuy does not maintain inventory, bear the risk of loss, and only collects money by fee, whereas a seller would typically 'adjust[] price[s] in relation to the value of the goods in question'." *Id*.19.  (citing Y.Y.G.M. SA v. Redbubble, Inc., No. 19-CV-4618 (RGK), 2020 U.S. Dist. LEXIS 228578, 2020 WL 3984528, at *3 (C.D. Cal. July 10, 2020). Similarly, though Defendant plays a role in the distribution process, it "does not maintain inventory, bear the risk of loss, and only collects money by fee, whereas a seller would typically 'adjust[] price[s] in relation to the value of the goods in question'."*Id*. Therefore, based on the totality of the circumstances and the key factors of distinction stated above, it's unquestionable that AllChinaBuy acts as a facilitator rather than a seller of the alleged infringing products. Thus AllChinaBuy can not be liable for trademark infringement or any other violation of trademark law.

Plaintiff provided a YouTube video titled "ACBUY OFFICE AND WAREHOUSE TOUR (INSANE IN REAL LIFE)" ("Tour Video") and claims that "Defendants not only have direct operational knowledge of all of the items for sale and those ordered by customers, but Defendants also facilitate this process by manually viewing and approving each order." *See* Opposition, at 1,10. As this video has been removed on Youtube,, Defendant can not verify its authenticity and truth of the contents in terms of the alleged arguments brought by Plaintiff. *See* DECLARATION OF JASON M.  DRANGEL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO  DEFENDANTS' MOTION TO  MODIFY THE PRELIMINARY INJUNCTION, ¶10.

According to Plaintiff, this Tour Video is associated with one Youtube Channel @Jei. Id.¶5-6. Plaintiff admits that, "'Jei' is a moniker used by a social media influencer for 'reps' or 'replicas," *Id*.¶4. Moreover, noticeably, under each video posted by this Youtube Channel @Jei, there is a disclaimer that "All my videos are for educational and entertainment purposes only". *See* Exhibit B- Screenshot of two videos published by Youtube Channel @Jei. Based on the reasons above, this Tour Video can not be used to prove any related fact or factor of this case here.

### C. The Preliminary Injunction Order Is Overbroad To Cover Worldwide Territory

Plaintiff argued that because Defendant operated websites, which are not bound by territorial restraint, allegedly offered for sale and sold Counterfeit Products in the United States, such conducts are considered "use in commerce" that occurred in the United States. This is simply wrong on the law.

"The Court may enjoin Defendant's foreign activities only if they involve a "domestic application" of the Lanham Act." *Celine S.A. v Hongkong CSSBUY E-Commerce Co.*, 2024 US Dist LEXIS 197474, at *12 [SDNY Oct. 30, 2024]. 15 U.S. Code § 1127 The Lanham Act defines "use in commerce" as follows: The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce– (1) on goods when– (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce[.]

Defendant did not advertise or offer the sale of alleged Counterfeit Products to customers nor did Defendant execute the transportation of goods. Defendants simply serve as intermediaries and a platform for customers to complete such transactions. In order for

customers located in the United States to receive the goods purchased, customers are required to arrange shipment through third party seller(s) and third party courier(s) which are not under the control of Defendants. Defendants play an insignificant role in the domestic shipment process.

In order for the Lanham Act to apply extraterritorially, Plaintiff must make a showing that is sufficient to support a worldwide injunction. Aside from the operation of the website, on which Defendants do not advertise or offer the sale of Counterfeit Products, every conduct, from the warehousing to photographing, occurs outside the United States. Defendants do not own or handle the goods beyond those points. Defendants do not assert or have any control over the pickup and delivery of such goods. In *Celine*, the Court held that "Plaintiffs in no way suggest that Defendant provides services or performs work from within the United States… at a minimum, Plaintiffs 'needed to show that the [counterfeit goods] originally sold abroad were then resold inside the United States by U.S. end-users because only then would the goods have begun 'serving a source-identifying function in the way Congress described.'" *Celine S.A. v. Hongkong CSSBUY E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474, *16. The only sales, if at all, Defendants make with connection to the United States commerce is the sales of service as Defendants did not and do not sell the goods to the customers located in the United States, and instead, facilitate the transaction(s). Plaintiff has not provided any evidence to that effect. Therefore the Plaintiff's "use in commerce" argument must fail and the Court should grant Defendant's Motion to Dissolve or Modify Preliminary Injunction Order.

### D. The Preliminary Injunction Is Overbroad as Extending Beyond Profits

Plaintiff's opposition does not address the central defect in the existing preliminary injunction: it operates as a sweeping asset restraint untethered to any equitable interest and

functions as security for a potential future monetary judgment. Plaintiff's opposition attempts to reframe the issue as one of evidentiary sufficiency, arguing that Defendants failed to provide "reliable and comprehensive documentary proof" demonstrating that certain assets should be exempt from restraint. *See* Opposition,15. This argument misstates both the governing burden and the legal standard.

Defendants submitted a spreadsheet evidencing transactions from April 25, 2024 through July 12, 2025 relating to purchased goods from third-party merchants by customers that were facilitated by Defendants. Zhang Dec., ¶¶ 25-27, Exhibit E. With filtering by orders shipped solely to the U.S., including Puerto Rico and the U.S. Virgin Islands and cross-referencing variations of Plaintiff's mark, amounting to 252 orders. *Id*.,¶¶7. Defendants' submission was sufficient.

Therefore, the amount arising out of the transactions is the only amount of Defendants' assets that should be frozen, and all other assets should be exempted from the asset freeze, assuming the Court declines to dissolve the Preliminary Injunction in its entirety.

## **CONCLUSION**

For the foregoing reasons, as Defendant acts as a facilitator or transactional intermediary of alleging infringing products, Defendant cannot be held liable for trademark infringement. Furthermore, the Preliminary Injunction's freeze of all AllChinaBuy assets is overly broad and should be modified because asset freezes may only extend to funds sufficient to secure an award of an accounting of profits. Accordingly, Defendant respectfully requests that the Court grant its Motion and dissolve the Preliminary Injunction Order or, in the alternative, modify the scope of the Preliminary Injunction Order so that it (i) extends only to activity in the United States; and (ii) freezes only those assets necessary to satisfy a potential equitable award of profits.

| | |
|---|---|
| Dated: New York, New York<br>      February 16, 2026 | _/s/ Yen-Yi Anderson_<br>Yen-Yi Anderson<br>Anderson & Associates Law, P.C<br>347 W 36th Street, Suite 1003<br>New York, NY 10018<br>646-452-9982<br>y.anderson@aalawpc.com<br>*Counsel for Defendants* |

## CERTIFICATION OF COMPLIANCE

This Reply to Plaintiff's Opposition to Defendants' Motion to Dissolve or Modify the Preliminary Injunction Order contains 3,600 words and is in compliance with the formatting rules set forth in Your Honor's Individual Practices.

Executed on this 16th day of February 2026 in New York, New York.

BY: /s/ Yenyi Anderson

Yenyi Anderson